# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| WILKIN MICKEY and KATHERINE MICKEY, <br> *Plaintiffs* <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST SERIES INABS 2006-D, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES SERIES INABS 2006-D, PHH MORTGAGE CORPORATION, and OCWEN LOAN SERVICING, LLC <br> *Defendants* | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____ <br><br> JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES WILKIN MICKEY and KATHERINE MICKEY, hereinafter called Plaintiffs, complaining of and about DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST SERIES INABS 2006-D, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES SERIES INABS 2006-D ("Deutsche Bank"), PHH MORTGAGE CORPORATION ("PHH"), and OCWEN LOAN SERVICING (Ocwen) (collectively referred to as "Defendants"), and for cause of action shows unto the Court the following:

## I. PARTIES AND SERVICE

1. Plaintiffs WILKIN MICKEY and KATHERINE MICKEY are citizens of the United States and reside in Lufkin, Angelina County, Texas.

2. Defendant DEUTSCHE BANK is a foreign corporate entity formed under the laws of the state of Delaware, that engages in, and is authorized to engage in, business in the state of Texas. Defendant DEUTSCHE BANK may be served with process by serving its registered agent C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

3. Defendant PHH is a corporation organized and existing under the laws of the State of New Jersey that engages in, and is authorized to engage in, business in the state of Texas. Defendant PHH may be served with process by serving its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

4. Defendant Ocwen is a foreign limited liability company organized and existing under the laws of the State of Delaware that engages in, and is authorized to engage in, business in the state of Texas. Defendant Ocwen may be served with process by serving its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, §1332(a)(1), and 1367.

6. Venue is proper pursuant to 28 U.S.C.A. §1391(a), in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Texas. Specifically,

the incident made the subject of this suit occurred in Angelina County, Texas within the boundaries of the Eastern District of Texas.

### III. FACTS

7. On or about August 13, 1997, Plaintiff acquired real property as his homestead located at 1208 Henderson St., Lufkin, TX 75904 (prior to rezoning address was 700 Henderson St., Lufkin, TX 75901). The legal description is as follows:

> **6780 WILKIN PLACE BLK 1 LOT 1, AN ADDITION TO THE CITY OF LUFKIN, TEXAS OF RECORD IN CABINET C, SLIDE 171-A OF THE MAP AND PLAT RECORDS OF ANGELINA COUNTY, TEXAS AND PROPERTY**

At all relevant and material times hereto, Plaintiffs were and are the fee simple owners of the subject Property.

8. The loan agreement for the mortgage was between Plaintiffs and Miracle Mortgage. On or about September 1, 2006, Plaintiff executed a Note in the principal sum of $156,000, secured by the "Deed of Trust" to the property described in paragraph 10 with IndyMac Bank. The loan was then serviced by OneWest Bank FSB.

9. Ocwen purchased the mortgage servicing rights to Plaintiffs' mortgage from OneWest Bank FSB on or about June 10, 2013.

10. Due to financial hardship, Plaintiffs completed a modification of their loan agreement with Ocwen on or about June 1, 2015.

11. One of the terms of the modification was that $17,911.19 was capitalized to the unpaid principal balance of the loan. Per Ocwen's legal counsel, this amount represented arrearages due, fees, and taxes for the years 2012, 2013, and 2014.

12. On or about March 1, 2018, Ocwen notified Plaintiffs that the escrow account associated with the loan was short.

13. Plaintiffs found out via phone, and subsequently mail, that the shortage was due to taxes being paid twice in 2017. The taxes for the year 2017 were paid on November 20, 2017 and taxes for 2012 were allegedly paid on April 4, 2017.

14. After many attempted phone calls and constantly speaking to different customer service agents, Plaintiffs got nowhere in their attempts to inform Ocwen that the amount due for 2012 taxes was included in the loan modification.

15. Eventually Plaintiffs had to hire legal counsel to try to clarify the matter. Plaintiffs are disabled and on a fixed income and would not be able to sustain the increased payments.

16. Plaintiffs' counsel contacted Ocwen's outside counsel to clarify and rectify the matter via electronic communication and phone on March 6, 7, and 9. Ocwen's counsel advised they were looking into the matter and would be in touch.

17. Ocwen's counsel did not respond to any further attempts at communication following March 12, 2018.

18. Plaintiffs' legal counsel contacted Ocwen via written correspondence on April 16, 2018, to remind them of the terms of the modification and the inclusion at that time of the inclusion of the 2012 taxes. The amount provided that represented 2012 taxes during the modification in 2015 was the exact amount allegedly paid for 2012 taxes in 2017.

19. Ocwen responded on May 1, 2018, again asserting that 2012 taxes were not paid prior to the modification, therefore it was their conclusion that 2012 taxes were not included in the capitalized amount added to the loan.

20. After many more phone calls over the next month and again speaking with different customer service agents and attempts to reach out to Ocwen counsel, Plaintiffs' counsel got nowhere in attempts to rectify the matter of the taxes and the capitalized loan amount.

21. On July 2, 2018, Plaintiffs' legal counsel again contacted Ocwen via written correspondence to request an itemization of the more than $17,000 capitalized during the loan modification process and why Plaintiffs were advised that 2012 taxes had been paid when they were not, among other things.

22. Ocwen responded on July 18, 2018 itemizing a total of $9,845.47. It purported to not included 2012 taxes, but it also did not account for the additional $8,065.72.

23. Plaintiffs continued to make payments and attempted to speak with Ocwen personnel to resolve the issue surrounding the 2012 taxes to no avail.

24. Plaintiffs continued making regular payments in the amount prior to the second addition of the 2012 taxes.

25. Plaintiffs and Plaintiffs' counsel continued attempts to contact Ocwen in earnest to rectify this matter to preserve Plaintiffs' credit rating and ensure the property would not go into foreclosure.

26. In October 2019, Ocwen refused to accept payment from Plaintiffs; incorrectly stating that Plaintiffs owed thousands of dollars in back payments.

27. Defendants counsel, Barry McCain, whom Plaintiffs' counsel was working with to resolve this matter, advised in writing on October 17, 2019 that Plaintiffs send the mortgage payment to him at his office to "assure it gets to the right place."

28. The check was sent immediately and McCain confirmed receipt.

29. On or about November 1, 2019, PHH began servicing the loan. (PHH is a wholly owned subsidiary of Ocwen Financial.)

30. PHH also refused to accept payment from Plaintiffs in November 2019. They incorrectly claimed plaintiff owed more than $5,000 in mortgage payments.

31. On November 26, 2019, after inquiry from Plaintiffs' counsel as to why the check sent in October for payment still had not been presented to Ocwen, McCain asked whether he should return, hold, or cash the check.

32. Plaintiffs' counsel reminded McCain that he was supposed to ensure the check got to the "right place" in his client's organization and was accepted for payment.

33. As of the date of this filing, the check still has not been presented or cashed for payment.

34. After more than two years, Defendants have yet to provide an accounting for the modification. They are also still refusing to accept payments. Due to "outstanding unpaid late charges, returned item charges, shortages, and other fees" and misapplied payments PHH claims Plaintiffs owe more than $11,000 as of February 1, 2020 and is threatening foreclosure.

## IV. AGENCY AND RESPONDEAT SUPERIOR

35. Wherever it is alleged that Defendant did anything, or failed to do anything, it is meant that such conduct was done by Defendants' employees, vice principals, agents, attorneys, and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct was within the scope of their authority. Plaintiff did rely to Plaintiffs detriment on Defendants' representatives being vested with authority for their conduct. Defendants are vicariously liable for the conduct of their employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendants' affiliated entities by virtue of respondeat superior, apparent authority, and estoppel doctrines.

## V. FIRST CAUSE OF ACTION: DECLARATORY RELIEF

36. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

37. Plaintiffs, in reliance upon Ocwen's representations, agreements, and assurances, entered into the Settlement Agreement and Loan Modification in June 2015.

38. Defendants have repeatedly ignored Plaintiffs' efforts to obtain the information regarding the amount owed under the parties' agreements.

39. Notwithstanding the foregoing, Defendants have insisted that Plaintiffs pay amounts that are not owed.

40. Plaintiffs are entitled to declaratory relief and a judgement of the Court against Ocwewn and PHH declaring an itemization of the amount capitalized to the loan in 2015, declaring the amount owed once the escrow account is corrected, and finding that the 2012 tax amount has been accounted for and is currently in repayment. All efforts by Plaintiffs to obtain this information, and Defendants' obligation to provide the information, have been unsatisfied.

41. Plaintiffs are further entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this claim against Defendants for which Plaintiffs now sue Defendants.

42. THEREFORE, Plaintiffs request that Defendants be cited to answer and appear and, that upon final hearing hereof, Plaintiffs have judgement against Defendants for declaratory relief declaring 2012 taxes were incorporated into the modification and are currently in repayment, any amounts due after correcting the escrow account, if any; and for such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

### VI. SECOND CAUSE OF ACTION: BREACH OF SETTLEMENT AGREEMENT

43. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

44. Defendants, individually and through PHH's predecessor Ocwen, entered into a Settlement Agreement with Plaintiffs which has not been honored or complied with by Defendants.

Defendants have failed to honor its obligations and/or has rendered Plaintiffs' performance impossible.

45. Plaintiffs have been damaged as a result of Defendants' breach of the agreements in an amount within the jurisdictional limits of this Court, for which Plaintiffs now sue Defendants, together with prejudgment interest thereon at the highest legal rate, post-judgment interest, costs of Court and attorneys' fees.

46. THEREFORE, Plaintiffs request that Defendants be cited to answer and appear and, that upon final hearing hereof, Plaintiffs have judgement against Defendants for damages, attorneys' fees, prejudgment and post-judgment interest, costs of Court and such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

### VII. THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

47. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

48. Plaintiffs would further show that Defendants supplied false information in the course of said Defendant's business, profession or employment, or in the course of a transaction in which Defendant has a pecuniary interest, and that such information was supplied by Defendant for the guidance of Plaintiff in the transactions described herein above. Defendants represented to Plaintiffs the current status of payments. Plaintiff attempted to make payments, then Defendants rejected those payments. Defendants failed to exercise reasonable care or competence in obtaining or communicating such information. Plaintiffs aver that Plaintiffs suffered pecuniary loss, described more fully herein, which was proximately caused by Plaintiffs' justifiable reliance on such information.

## VIII. FOURTH CAUSE OF ACTION: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)

49. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

50. Plaintiffs would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices – Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

51. Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff's to a grossly unfair degree.

52. Plaintiffs would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages more fully described herein below.

53. Plaintiffs further contend that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in Section 17.45(9) and Section 17.45(13) of the DTPA.

## IX. FIFTH CAUSE OF ACTION: VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT (TDCA)

54. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

**55.** The acts, conduct and/or omissions of Defendants Ocwen and PHH, failing to provide Plaintiffs with an accurate accounting of the overpayment of the 2012 tax amount and the correct monthly payment amount, and instead proceeding to threaten a foreclosure sale constitutes

violations of the Texas Debt Collection Act, Tex. Fin. Code § 392.001 et seq. ("TDCA"), because all of those communications constitute the intentional and/or knowing mischaracterization of the character, amount or extent of the debt to be collected, and which false representations of material fact Plaintiffs relied upon to their detriment, and which ae a producing cause of the actual damages sustained and incurred by the Plaintiffs in excess of the minimum jurisdictional limits of this Court.

56. Specifically, Defendants Ocwen's and PHH's acts, conduct, or omissions as described herein constitute violations of the following provisions of the TDCA: § 392.301(a)(7) – threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; and § 392.301(a)(8) – threatening to take an action prohibited by law; and further § 392.304(a)(8) – misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and § 392.304(a)(19) – using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer and which violations are a producing cause of the actual damages sustained and incurred by the Plaintiff in excess of the minimum jurisdictional limits of this Court.

57. As to each of the acts, conduct and/or omissions of Defendants Ocwen and PHH acting in their capacity as a "debt collector" which constitute violations of TDCA were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of the Plaintiffs, Plaintiffs are entitled to and hereby seek an aware of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## X. SIXTH CAUSE OF ACTION: COMMON LAW FRAUD

58. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

59. Plaintiffs further show that Defendants made false material representations to Plaintiffs with the intent that Plaintiffs rely upon the representation. Defendants made these representations to Plaintiffs with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to their detriment. Defendant knew the representations were false or made the representations recklessly, as a positive assertion, with knowledge of the truth of the statement. Plaintiffs relied upon the representation which caused Plaintiffs injury. Plaintiffs suffered damages for which Plaintiff herein sues. Please see all facts set out in this Original Complaint. Plaintiffs' allege all actions taken by Defendants and all representations made by Defendants through all of its representatives/employees taken together constituted fraud. More specifically, (including but not limited to) Defendants through its representatives/employees told Plaintiffs that, 1) the 2012 tax payment was included in the loan modification in 2015; and 2) no foreclosure action would take place while this matter was being resolved. Defendants through its representatives/employees led Plaintiffs to believe their loan was current in 2015 following the modification and that they would not initiate foreclosure proceedings while this matter was pending. However, these material representations by Defendants through its representatives/employees were false, and relying on these representations, Plaintiffs are in danger of losing their home. They also suffered damage to their credit rating. Defendants knew Plaintiffs were relying on its representations as evidenced by the communication between counsel for Plaintiffs and Defendants when finalizing the modification and settlement agreement. Defendants are aware the foreclosure process is moving forward and intentionally misled Plaintiffs as to this fact.

## XI. DAMAGES

60. Plaintiffs repeat, re-allege, and incorporates by reference all paragraphs above, as if fully written here.

61. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. out-of-pocket expenses, including but not limited to attorney fees;

   b. loss of credit and damage to credit reputation;

   c. interest and/or finance charges assessed against and paid by Plaintiff; and

   d. loss of the "benefit of the bargain."

62. Plaintiffs would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions. As a result of such acts, practices and/or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court. Further, Plaintiffs are entitled to recover multiple damages as provided by Section 17.50(b)(1) of the Texas Business and Commerce Code.

63. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiffs. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or

omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## XII. ATTORNEY'S FEES

64. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Section 27.01(e) of the Texas Business and Commerce Code; and (c) common law.

## XIII. JURY DEMAND

65. Plaintiffs hereby demands trial by jury.

## XIV. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendants be cited to appear and answer herein, and that upon final trial, judgment be entered for the Plaintiffs against Defendants for the economic and actual damages requested herein above in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

**MICKEY LAW GROUP, PLLC**

By: *[signature: Kamisha M. Mickey]*
KAMISHA M. MICKEY
State Bar Number 24074712
5151 Katy Fwy, Suite 210
Houston, Texas 77007

713.360.7719 Telephone
832.369.0063 Facsimile
kmickey@mickeylawgroup.com

**ATTORNEY FOR PLAINTIFFS**